## Lacich v. Robb, Appellant.

Argued September 30, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

338

*Francis H. Patrono,* with him *John C. Pettit,* and *Patrono & Edwards,* for appellant.

*Wray G. Zelt,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 9, 1965:

Stanley Lacich was a passenger on a pickup truck being operated southbound by William Sekulich on Route No. 837 in Washington County. William Robb, employee of Jack Hornbake, was operating a coal truck northbound on the same Route 837. At a point about one mile north of Courtney, the two trucks collided and Lacich was seriously injured. He brought suit in trespass against Robb and Hornbake and, later, Sekulich was brought into the litigation as an additional defendant. Robb never really became a party in the case because he was never served. The jury returned a verdict in favor of the plaintiff against Hornbake who moved for a new trial.

The motion for a new trial was argued on December 30, 1963, and the court en banc on January 3, 1964, filed its decision denying a new trial. On January 14, 1964, Hornbake petitioned the court for a reargument

stating that the court which denied his motion for a new trial had not given adequate consideration to his motion, because the trial judge's term of office was to expire on January 6, 1964. The new court en banc heard the reargument and decided not to interfere with the decision of the preceding court en banc which had been made up of the trial judge and two other judges.

Hornbake appealed to this Court. He finds reason to complain because the trial court rendered a decision on his motion for a new trial in four days. If this was a fault, it is a fault that might well be adopted by other judges because, ever since 1602 when Hamlet lamented over the "law's delays," litigants and lawyers have been patiently waiting for decisions for a much longer period than four days while undisposed-of motions gathered dust on the desks and piled-up chairs of the judicial sanctum-sanctorum.

It is not apparent why four days was not an adequate length of time with which to decide the question in issue. The record was only 150 pages long, there were no complicated theories involved, no mathematics, no engineering or controverted documents. Fundamentally the only problem was one of credibility of the witness. Since the trial judge had seen and heard the witnesses he certainly was at home on this subject even before argument on the motion.

The appellant Hornbake does not state that he was not given an opportunity to present his case in full at his original argument on his motion for a new trial. The appellee points out in his brief (not refuted by the appellant) that the appellant's brief in the original argument consisted of 25 pages and that no limitation was placed on his oral presentation in court. This would indicate that he was allowed ample latitude in which to air and argue his grievances.

Moreover, he had an additional opportunity to expatiate on his complaints before a new court en banc

340

which was made up of three judges, two of whom did not sit on the original court en banc. This new court en banc refused a new trial and declined to disturb the decision of the original court en banc, stating that "a trial judge's opinion is very important, especially on close questions."

The appellant strenuously maintains that the verdict was against the weight of the evidence. On that matter, the trial court said: "It is true that from the evidence a jury might have come to a different conclusion, but fundamentally the Court is of the opinion that the issue was one of fact only as to the responsibility for the accident and the Court is of the considered opinion that the facts are sufficient to support the jury's findings."

The accident, which gave rise to this litigation, occurred, as has already been stated, on Route 837 with the conflicting vehicles going in opposite directions. Did the vehicles meet on the plaintiff's side of the road or on the defendant's side of the road? The answer to that question would pretty well decide which driver was negligent. In his brief before this Court the appellant says: "The Sekulich-Lacich theory of the accident was that the accident happened on their right-hand side of the highway at the time when the front end of their vehicle was three to four feet on the road. The version of the accident presented by the original defendant and his witnesses was that the accident happened on the Robb-Hornbake side of the road."

Here you have the out-and-out direct contradiction between the parties as to how the accident occurred. Who is to decide this stark conflict? Obviously the jury. The appellant argues strenuously that the weight of the evidence shows that the accident happened on the Robb-Hornbake side of the road, but the jury, after hearing all the evidence and appraising the witnesses under proper instructions of the court, decided this fac-

tual issue in favor of the plaintiff. The trial judge, as we have seen, was convinced that the verdict was supported by the evidence. The second court en banc, after hearing full argument on the matter, agreed that the trial judge's disposition of the motion for a new trial was not to be overturned or modified. In all these circumstances, all we can determine here is whether the record supports the verdict and the affirming decisions of two courts en banc. We are constrained to say that it does. Nor was the verdict against the weight of the evidence.

William Sekulich himself testified: "Q. Where was the truck [the defendant's truck] when it started to weave? A. 150 feet maybe more. Q. What do you mean by weave? A. Started, didn't have control of the truck, go to this side and go back again on this side. Q. *Did it come over on your side? A. Yes, it did.* Q. How far? A. More than half. That's why I stopped." (Emphasis supplied)

The plaintiff himself did not testify because the brain injury which he sustained in the accident rendered him incompetent to testify.

The truck which Sekulich was operating was owned by a John Dianovich. The plaintiff Lacich had asked Sekulich to drive the coal truck in order to get some coal for Dianovich. From this the defendant maintains that Lacich was the master of the driver Sekulich and that, therefore, Sekulich's negligence would be imputable to Lacich. This argument flattens against the stone wall of the jury's verdict which declared Sekulich free of negligence. Obviously a negligence which does not exist cannot be transferred.

In addition, the burden of proof of showing negligence on the part of the plaintiff Lacich rested on the shoulders of the original defendant Hornbake. There it remained. It never went further. It never got into the jury box to convince the occupants there of any

negligence on the part of the passive passenger Lacich. The defendant cites in behalf of his contention the case of *Wollaston v. Park*, 47 Pa. Superior Ct. 90. The facts in that case were wholly different from the ones at bar. The Superior Court said: "The evidence in this case established that the defendant had selected the person who was driving the car at the time it was operated in a negligent manner. She had absolute control of the person who was thus driving, for she clearly had the right at any moment to withdraw him from the management into which she had wrongfully thrust him. She was his superior in the management of the car, at that time, and he was her representative, servant or agent in that management." There was not the slightest evidence in the case at bar to show that Lacich exercised any such control over the Sekulich vehicle.

Judgment affirmed.